IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEVON ENERGY PRODUCTION
COMPANY, L.P.,

    Plaintiff,                                                    Case No. 1:10-cv-00665-JAP-RLP

vs.

MOSAIC POTASH CARLSBAD, INC., a Delaware
Corporation,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On July 15, 2010 Plaintiff Devon Energy Production Company, L.P. filed a Complaint For Declaratory Relief Pursuant To Fed. R. Civ. P. 57 (Doc. No. 1) (Complaint) seeking a declaration that (1) "federal law has completely pre-empted all oil and gas and potash operations and activities with regard to the location and drilling of oil and gas wells and mining operations on the lands and leases involved in this controversy, and (2) that the only remedies available to [Defendant Mosaic Potash Carlsbad, Inc.] are the federal administrative and judicial remedies under the Administrative Procedure Act and the Secretary of the Interior's 1986 Order." Complaint at 1-2. On August 11, 2010, Mosaic filed Defendant's Rule 12(b)(1) Motion To Dismiss For Lack Of Subject Matter Jurisdiction (Doc. No. 9) (Motion), arguing that the Court does not have jurisdiction over Devon's Complaint. Devon filed a Response (Doc. No. 11) on August 26, 2010 and Mosaic filed a Reply (Doc. No. 12) on September 8, 2010. Having reviewed the briefs and the applicable law, the Court concludes that it does not have jurisdiction over Devon's Complaint and that the Complaint should be dismissed.

## BACKGROUND

Devon is a corporation involved in oil and gas production. Mosaic is a corporation

1

involved in potash mining. Both parties apparently have leases to engage in their respective operations within the "Potash Area," an area comprising approximately 497,000 acres in Eddy and Lea Counties New Mexico that is managed by the Bureau of Land Management (BLM). Management of the Potash Area is governed by a 1986 Secretarial Order (1986 Order), issued under the Mineral Leasing Act (MLA), that outlines procedures for leasing land within the Potash Area and regulates drilling and mining within the Potash Area. *See* 51 Fed. Reg. 39425 (October 28, 1986). The 1986 Order prohibits drilling "for oil and gas at a location which, in the opinion of the authorized officer, would result in undue waste of potash deposits or constitute a hazard to or unduly interfere with mining operations being conducted for the extraction of potash deposits" and requires an oil and gas lessee to establish that "drilling will not interfere with the mining and recovery of potash deposits" before the lessee can drill in the Potash Area. *Id.* at III(A)(1)-(2). With respect to potash mining within the Potash Area, the 1986 Order provides that "no mining or exploration operations shall be conducted that, in the opinion of the authorized officer, will constitute a hazard to oil or gas production, or that will unreasonably interfere with orderly development and production under any oil or gas lease issued for the same lands." *Id.* at III(C)

     Devon filed an application for a permit to drill the "Apache 25 Federal 16 Well" (Apache Well) at a location in the Potash Area on March 17, 2005. On March 22, 2005, the BLM denied Devon's application but advised Devon that an alternative location between two existing wells could be approved. Devon amended its application to reflect the new location and, on September 9, 2009, Devon's application to drill at the new location identified by the BLM was approved. After the well was approved, a Devon representative met with a contractor and identified the location to be drilled as the original site requested by Devon, not the alternative

location identified and approved by the BLM.  As a result of this mistake, the Apache Well was drilled at the location that the BLM had specifically disapproved. This mistake was not discovered until February 2006, after drilling had been completed.  Devon notified the BLM of the mistake and requested approval of the well site as drilled.  After receiving Devon's request, the BLM performed an environmental assessment, which was posted on the BLM's website, and on March 26, 2006 the BLM approved the Apache Well.

In June 2006, Mosaic sent a letter to Devon advising that Devon's placement of the Apache Well in the wrong location wasted Mosaic's mineable potash in the area.  Mosaic contended that it was entitled to compensation for the potash wasted by Devon's drilling.  Mosaic initially estimated the market value of its loss at twenty-six million dollars, but later reassessed its loss at one-hundred-sixty million dollars due to changed market conditions. (Doc. No. 9-1, Exs. G and I). Over the course of the next four years, the parties engaged in discussions regarding Devon's liability and Mosaic's damages stemming from the drilling of the Apache Well.  On July 16, 2010 Devon informed Mosaic that the parties had reached an impasse and Devon filed its Complaint.

In its Complaint, Devon asserts that Mosaic intends to sue Devon for money damages under state law and that state law is completely preempted by the MLA and the 1986 Order such that the only remedies available for disputes related to drilling in the Potash Area are the "federal administrative and judicial remedies under the Administrative Procedure Act" (APA) and the 1986 Order.  Devon seeks a declaratory judgment that federal law completely preempts Mosaic's state law claims.  In its Motion, Mosaic argues that the Court does not have jurisdiction over Devon's declaratory judgment action because "the Complaint fails to assert a federal question and because it fails to present a justiciable case or controversy."  Motion at 10.  Specifically,

Mosaic argues that the Court does not have jurisdiction because none of the federal laws cited by Devon effect a complete preemption of state law such that federal jurisdiction is created and because Mosaic's mere threat to sue Devon is not sufficient to establish a justiciable case or controversy especially given the fact that the parties were still engaged in settlement discussions. Because the Court concludes that it does not have jurisdiction, the Court does not address Mosaic's argument that there is not a case or controversy.

## DISCUSSION

"The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Devon asserts that the Court has jurisdiction over Devon's declaratory judgment action under 28 U.S.C. §1331. Section 1331 provides that federal district courts "have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States." To determine whether a plaintiff's claim arises under federal law, the Court applies the "well-pleaded complaint" rule. *See Turgeau v. Administrative Review Bd.*, 446 F.3d 1052, 1060 (10th Cir. 2006). According to the well-pleaded complaint rule, "a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based on federal law." *Id.* (quotation marks omitted). This rule allows the plaintiff to be "the master of the claim" and allows the plaintiff to "prevent removal to federal court by choosing not to plead a federal claim even if one is available." *Id.* (quotation marks and alteration omitted). However, "a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim." *Id.* (quotation marks omitted).

While the well-pleaded complaint rule ordinarily requires the Court to look at the plaintiff's complaint to determine whether the suit arises under federal law, the analysis is

slightly different in actions for declaratory judgment where "the position of the parties is often reversed." *See Cardtoons, L.C. v. Major League Baseball*, 95 F.3d 959, 964 (10th Cir. 1996). In declaratory judgment actions, "the plaintiff asserts a defense to an anticipated action by the declaratory judgment defendant" and it is therefore "the character of the impending action, not the plaintiff's defense, that determines whether there is federal question jurisdiction." *Id.* "Thus, federal question jurisdiction exists in a declaratory judgment action if the potential suit by the declaratory judgment defendant would arise under federal law." *Id.* Devon contends that Mosaic's claims arise under federal law for two reasons. First, Devon asserts that federal law has completely preempted state law with respect to disputes within the Potash Area such that Mosaic's claims can be recharacterized as federal claims. Second, Devon contends that Mosaic's claims require the Court to construe federal law and that the claims therefore arise from federal law. The Court addresses each of these arguments in turn.

**I. Complete Preemption**

Both parties appear to agree that Mosaic's potential claims against Devon are based on a state law claim for trespass as a result of the "undue waste of mineable potash" caused by Devon's drilling in a location specifically disallowed by the BLM. Complaint at 8, Motion at 13, Response at 22. Devon asserts, however, that Mosaic's state law claims are completely preempted[1] by federal laws and regulations governing mineral leases in the Potash Area such

---

[1] In determining whether complete preemption provides the Court with federal question jurisdiction, care must be taken to avoid confusing ordinary preemption, which "is ordinarily a federal defense to the plaintiff's suit," with conflict preemption, which so completely preempts state claims that a cause of action is recharacterized as a federal claim. *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63 (1987). Complete preemption is distinguished from "ordinary preemption" in that ordinary preemption, such as "the preclusive effect of a federal statute, is not enough to authorize removal to federal court." *Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146, 1154 (10th Cir. 2004).

that the claims actually raise a federal question over which this Court has jurisdiction. Ordinarily, "[n]either the plaintiff's anticipation of a federal defense nor the defendant's assertion of a federal defense is sufficient to make the case arise under federal law." *Turguea*, 446 F.3d at 1060; *see also Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63 (1987) (explaining that "[f]ederal preemption is ordinarily a federal defense to the plaintiff's suit" and, "[a]s a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court"). However, under the "complete preemption" doctrine, "a complaint alleging only a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim necessarily federal in character." *Id.* (citation marks omitted). In order for "complete preemption" to apply, a federal law must not only preempt a state law but must "also substitute[] a federal cause of action for the state cause of action." *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996).

While "complete preemption" can convert a state cause of action into a claim arising under federal law, the doctrine is an "extraordinary pre-emptive power" that is applied narrowly and has only been found in limited circumstances. *See Taylor*, 481 U.S. at 65 (1987) (noting that even with a civil enforcement provision "that lies at the heart of a statute with the unique pre-emptive force of ERISA" the Court is "reluctant to find" complete preemption); *Bill Johnson's Restaurants, Inc., v. N.L.R.B.*, 461 U.S. 731 (1983) ("[C]omplete preemption is not lightly implied."). Because "complete preemption" is such a narrow power, the Supreme Court originally articulated the rule that the doctrine should not be applied unless "Congress has clearly manifested an intent to make causes of action . . . removable to federal court." *Taylor,* 481 U.S. at 66. Thus, state law claims can only be "completely preempted under *Taylor* if [they] can be recharacterized as [claims] under federal law." *Turguea*, 446 F.3d at 1061 (quotation

6

marks and alterations in original omitted).  The Supreme Court has more recently interpreted *Taylor* as requiring that Congress express the intention for a federal law to "provide the exclusive cause of action for the claim asserted and to also set forth procedures and remedies governing that cause of action." *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003). "[T]he proper inquiry [therefore] focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable." *Id.* at 9 n.5.

Relying on the Supreme Court's articulation of the complete preemption doctrine in *Taylor*, the Tenth Circuit Court of Appeals outlined a two part test to determine whether a state cause of action has been completely preempted: (1) whether federal law preempts the state laws relied on in the state cause of action and (2) "whether Congress intended to allow removal in such cases,[2] as manifested by the provision of a federal cause of action to enforce" the preemptive federal law." *Schmeling*, 97 F.3d at 1343.  Because the first part of this test is closely related to the merits of the underlying claim, the Tenth Circuit cautioned that courts should avoid deciding the first question, whether federal law preempts state law, if analysis of the second question reveals that Congress did not intend to create a federal cause of action.  *See id.* (noting

---

[2]The Tenth Circuit has not yet considered whether this element of the complete preemption test should be modified in light of the Supreme Court's declaration in *Anderson* that "the proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended the cause of action to be removable." *Anderson*, 539 U.S. at 9 n.5. Other Circuits that have considered the question have concluded that a determination of whether Congress intended to allow removal is no longer an element of the complete preemption doctrine.  *See e.g. Hoskins v. Bekins Van Lines*, 343 F.3d 769, 776 (5th Cir. 2003) (noting that *Anderson* evidenced "a shift in focus from Congress's intent that the claim be removable, to Congress's intent that the federal action be *exclusive*").  While it is likely that the Tenth Circuit would modify the test set out in *Schmeling* to reflect the articulation of the complete preemption doctrine in *Anderson*, Congress's intent to create a federal cause of action is essential under both formulations of the rule.  If Congress did not create a federal cause of action, than it clearly did not intend that the federal law be exclusive or removable.

that the second inquiry has less relevance to the merits of the case and that if a federal court does not have jurisdiction, it should not comment on the merits of the preemption defense). With these principles in mind, the Court concludes that Congress express an intent to create a federal cause of action for disputes within the Potash Area and therefore the complete preemption doctrine does not provide the court with federal question jurisdiction. Lacking jurisdiction, the Court declines to address the preclusive effect of the MLA or the 1986 Order. *See id.*

In the few cases where the Supreme Court has found Congressional intent to create a private right of action, Congress has explicitly described the cause of action. For example, Section 502 of the Employee Retirement Income Security Act (ERISA), which the Supreme Court found in *Taylor* to completely preempt state law, expressly states that "[t]he district courts of the United States shall have jurisdiction . . . to grant the relief provided for in [§502(a)]." 29 U.S.C. §1132(f). In contrast, the Tenth Circuit has ruled, at least twice, that no private right of action exists in the Mineral Leasing Act. *See Cuba Soil and Water Conservation Dist. v. Lewis*, 527 F.3d 1061 (10th Cir. 2008) (concluding that the MLA does not create a private right of action to enforce its provisions regarding appropriation of MLA monies) and *Pullman v. Chorney*, 712 F.2d 447, 449 (10th Cir. 1983) (concluding that the Mineral Leasing Act does not create a private right of action to enforce violations of the Act's oil lease lottery regulations). While neither of those cases dealt with the same subject matter as Mosaic's threatened state action, Devon has not pointed to anything in the MLA that expressly or implicitly creates a private right of action by which Mosaic could obtain relief for Devon's allegedly wrongful conduct. The complete lack of any indication that Congress intended to "supplant state-law rights with a new statutory cause of action and to provide procedures by which a new federal claim could be brought" under the Mineral Leasing Act indicates that the MLA does not

completely preempt state causes of action for disputes within the Potash Area. *Gas Development Corporation v. Black*, 2006 WL 2632569, *3 (D.Colo. 2006) (unpublished).

Despite the lack of any indication in the MLA that Congress intended to create an exclusive federal remedy for disputes within the Potash Area, Devon argues that complete preemption exists because "Mosaic has a private federal remedy under the [Administrative Procedures Act (APA)] against the BLM[—]appealing or protesting the BLM's approval of the Apache Well." Response at 15. Under the APA, a party who has suffered a legal wrong because of agency action or inaction can assert a cause of action *against the agency* to remedy the harm caused by the agency's action. *See Tewa Tesuque v. Morton*, 498 F.2d 240, 243 (10th Cir. 1974). Devon contends that Mosaic was a party to the BLM's decision and that BLM's approval of the Apache Well, after it had already been drilled, adversely affected Mosaic such that Mosaic could appeal the BLM's decision to approve the well and seek to have the well plugged. *See* 43 C.F.R. §4.410(d) (providing that "[a] party to a case is adversely affected . . . when that party has a legally cognizable interest, and the decision on appeal has caused or is substantially likely to cause injury to that interest").

In arguing that Mosaic has an administrative remedy to appeal the BLM's ultimate approval of the well-site, Devon misconstrues the purpose of the private right of action element of the "complete preemption" doctrine. While Mosaic may have been able to appeal the BLM's approval of the Apache Well, the availability of an administrative remedy against the BLM has no bearing on whether Mosaic's state law claims against Devon have been completely supplanted by a private federal cause of action. Mosaic is not protesting the BLM's approval of the Apache Well after the well had been drilled. Rather, Mosaic is asserting a private cause of action against Devon for drilling a well without the BLM's approval that allegedly interfered

9

with Mosaic's mineral rights.  There is no administrative action that can be appealed under the APA with respect to Devon's act of drilling the well, and the APA therefore does not provide a federal remedy to Mosaic.  *See Tewa Tesuque*, 498 F.2d at 243 (noting that "[i]t is fundamental that a party suing under the APA must have suffered a legal wrong because of agency action or inaction"); *Strong v. Telectronics Pacing Systems, Inc.*, 78 F.3d 256, 261 (6th Cir. 1996) (concluding that administrative remedies under the Medical Device Amendments to the Food, Drug, and Cosmetic Act are insufficient to evince the clear manifestation of congressional intent necessary to create removal jurisdiction).

In addition to arguing that the APA provides a private cause of action, Devon also argues that Mosaic had two additional remedies available to it: (1) filing a map that detailed areas where mineral ore was known to exist and (2) informally objecting to proposed oil and gas well sites to the BLM.  Response at 18-19.  Devon does not explain how either of these "remedies" constitute a federal right of action, nor does Devon explain how actions that Mosaic could have taken prior the well being drilled necessarily replace Mosaic's state cause of action for damages caused by Devon's drilling of the well.  Further, given that Devon allegedly drilled the Apache Well after the BLM expressly prohibited Devon from drilling at the well's location, Devon has not explained how Mosaic's filing of a map or an objection to the proposed well site would have influenced drilling at the site. Thus, the Court finds no merit in Devon's argument that Mosaic's state cause of action for damages has been supplanted by a federal remedy because Mosaic could have filed a map or objected to the proposed well-site.

Because the MLA does not contain any language that indicates Congress intended to create a federal cause of action to supplant any state causes of action related to mineral leases and because the APA does not provide Mosaic with a federal cause of action to remedy any

damages caused by Devon's drilling, the Court concludes that the MLA does not completely preempt Mosaic's claims such that the state claims can be recharacterized as federal claims. In addition, since the Court concludes that the MLA does not create a federal cause of action and therefore cannot completely preempt state law, the Court declines to address the preemptive effect of the MLA.  *See Schmeling*, 97 F.3d at 1343 (noting that courts should avoid determining the preemptive effect of federal law if the complete preemption doctrine does not apply due to a lack of a federal cause of action).

## II.  Mosaic's Claims Do Not Arise From Federal Law

In addition to its argument that Mosaic's state law claims are completely preempted by the MLA, Devon also argues that the Court "has federal question jurisdiction because Mosaic's claims require this Court to construe federal law."  Response at 20.  Specifically, Devon contends (1) that since the BLM approved the well after it had already been drilled, the Court has federal question jurisdiction because the Court would have to determine whether the BLM's decision was proper before the Court could address the merits of Mosaic's claims and (2) that the Court has federal question jurisdiction because Devon would be subject to conflicting state and federal laws if Mosaic were permitted to bring suit in state court.  Response at 21-22.

In support of its assertion that resolution of Mosaic's threatened state claims requires the construction of federal law, Devon argues that because the BLM ultimately approved Devon's well, the Court "would have to determine whether the BLM's decision to approve of the Apache well location as drilled was improper" before the Court can "reach[] the merits of Mosaic's claimed monetary damages."  The Court disagrees.  Under the well-pleaded complaint rule, "[i]t is the character of the impending action, not the plaintiff's defense, that determines whether there is federal question jurisdiction." *Cardtoons*, 95 F.3d at 964.  Here, Mosaic's threatened action is

for monetary damages stemming from Devon's alleged trespass and the accompanying waste of potash.  Devon has not demonstrated that these claims arise from any federal statute or regulation. To the extent that the BLM's approval of Devon's well *after* it had already been drilled has any bearing on Mosaic's trespass claims, that approval is not an element of Mosaic's cause of action as it at most is only a defense to Mosaic's state law claims.

Devon's final argument—that the Court has jurisdiction because Devon would be subject to conflicting state and federal laws—is similarly without merit. The existence of a conflict between state and federal laws is the basis for ordinary "conflict preemption." *See United States v. City and County of* Denver, 100 F.3d 1509, 1512 (10th Cir. 1996) (explaining that "'[c]onflict preemption' occurs where it is impossible to comply with both the federal and state laws, or the state law stands as an obstacle to the accomplishment of Congress's objectives"). Ordinary "conflict preemption" is merely a federal defense that is insufficient to confer federal question jurisdiction.  *See Taylor*, 481 U.S. at 63 (explaining that ordinary preemption "does not authorize removal to federal court").

Despite the clear precedent establishing that a preemption defense is insufficient to confer federal question jurisdiction, Devon directs the Court to *Trailways v. State Corporation Commission of the State of Kansas*, 565 F.Supp 777 (D.Kan. 1983), a case that, according to Devon, stands for the proposition that "a claim of federal preemption of state law is sufficient to satisfy jurisdictional requirements."  Response at 21.  Notably, *Trailways* involved a declaratory judgment action against a state agency to enjoin the agency from enforcing a state regulation that conflicted with federal law.  *See Trailways*, 565 F.Supp. at 778.  It is well settled that a declaratory judgment action against a state entity alleging that state law is preempted by federal law presents a federal question over which the federal courts have jurisdiction.  *See Shaw v.*

*Delta Air Lines, Inc.* 463 U.S. 85, 96 n.14 (1983) (noting that "[i]t is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve") (citation omitted). Thus, if Devon was seeking a declaration that the state's enforcement of a state law was preempted by the MLA, the Court could have federal question jurisdiction.  This rule has no bearing, however, on whether the Court has jurisdiction over the controversy between Devon and Mosaic—a dispute between two private parties where federal preemption is nothing more than a defense to an ordinary state law cause of action—and the Court therefore concludes that Mosaic's threatened claims do not arise from federal law.

Because Mosaic's state law claims are not completely preempted by federal law and because Mosaic's claims do not arise from federal law, Devon has failed to meet its burden of establishing that the Court has subject matter jurisdiction over Devon's Complaint.

**III.  Case or Controversy**

In its Motion, Mosaic also argues that the Court does not have jurisdiction over Devon's Complaint because the Complaint does not present a justiciable case or controversy.  Because the Court does not have jurisdiction over Devon's Complaint due to the absence of a federal question, it is not necessary to address this contention and the Court declines to consider whether a justiciable case or controversy exists.

IT IS ORDERED THAT Defendant Mosaic Potash Carlsbad, Inc.'s Rule 12(b)(1) Motion To Dismiss For Lack Of Subject Matter Jurisdiction (Doc. No. 9) is GRANTED and Plaintiff Devon Energy Production Company's Complaint For Declaratory Relief Pursuant To Fed. R.

Civ. P. 57 (Doc No. 1) will be dismissed.

_____
SENIOR UNITED STATES DISTRICT JUDGE